# IN THE DISTRICT COURT IN AND FOR TULSA COUNTY
# STATE OF OKLAHOMA

| | |
|---|---|
| 1. DANA BURR, an individual,<br><br>Plaintiff,<br><br>v.<br><br>1. YOGESH MITTAL, an individual,<br><br>2. BRISTOW ENDEAVOR HEALTHCARE, LLC d/b/a CENTER FOR ORTHOPAEDIC RECONSTRUCTION AND EXCELLENCE, a foreign limited liability company,<br><br>Defendants. | Case No.: 4:23-00071-CVE-JFJ<br><br>**Attorney Lien Claimed**<br>**Jury Trial Demanded** |

## FIRST AMENDED COMPLAINT

COMES NOW the Plaintiff, Dana Burr ("Ms. Burr"), and submits this First Amended Complaint seeking damages against Defendants Yogesh Mittal and Bristow Endeavor Healthcare, LLC ("Bristow") d/b/a Center for Orthopaedic Reconstruction and Excellence ("CORE") for sexual harassment, sexual assault and battery, sex discrimination in the workplace, negligence/gross negligence, and negligent training and supervision. In support of her claims, Ms. Burr hereby states and alleges as follows:

## I. PARTIES, JURISDICTION, & VENUE

1. Ms. Burr is an individual who resides in Tulsa County, State of Oklahoma.

2. Defendant Yogesh Mittal is an individual who resides in Tulsa County, State of Oklahoma.

1

3. Defendant Bristow is a foreign limited liability company incorporated in the State of Texas that is registered to do business in the State of Oklahoma and provides healthcare services in Tulsa and Creek Counties, State of Oklahoma.

4. CORE is a facility in Jenks, Oklahoma that is owned and operated by Defendant Bristow.

5. The Court has jurisdiction over this matter.

6. Venue is proper in this Court pursuant to 12 O.S. § 134.

7. Ms. Burr filed a charge of discrimination with the Equal Employment Opportunity Commission on February 2, 2022 and received notice of her right to sue on July 1, 2022.

8. The parties to this action subsequently negotiated and signed a tolling agreement, which prohibits Defendants from asserting any time-based doctrine or defense, rule, or statute otherwise limiting Ms. Burr's right to preserve and prosecute her claims against the Defendants no earlier than January 20, 2022, and no later than January 27, 2022.

## II.   FACTUAL BACKGROUND

9. Ms. Burr incorporates by reference the preceding paragraphs as if fully set forth herein.

10. From June 2019 to December 2021, Ms. Burr was employed by CORE as a Certified Surgical Technician ("CST").

11. For approximately four days a week over the course of this time, Ms. Burr worked as part of a surgical team led and supervised by Defendant Mittal.

12. Upon information and belief, and at all times relevant hereto, Dr. Mittal held and still holds a substantial ownership interest in CORE and was an agent of Defendant Bristow.

13. From the start of Ms. Burr's assignment under Defendant Mittal, he regularly and openly directed sexually inappropriate comments, innuendos, and "jokes" toward her and other female employees working under his supervision in the operating room.

14. Such "jokes" directed toward Ms. Burr ranged from insinuations to her co-workers that she was using a vibrator at work, to "accidentally" pressing his body against hers, and staring at and grabbing her breasts.

15. Due to his supervisory power and influence in CORE, many surgical team members ignored or nervously laughed off Defendant Mittal's behavior; others even joined Defendant Mittal in spewing sexually charged comments.

16. Soon after Ms. Burr joined Defendant Mittal's surgical team, Defendant Mittal also began asking her for unspecified "pictures." Because Defendant Mittal's wife and Ms. Burr both compete in bodybuilding competitions, Ms. Burr initially assumed Defendant Mittal wanted to view her competition photos, which she eventually shared with Defendant Mittal and her coworkers.

17. However, Defendant Mittal continued to make unspecified requests for "pictures," which made Ms. Burr uncomfortable.

18. In response, she would either ignore Defendant Mittal or redirect the conversation elsewhere.

19. Defendant Mittal continued to direct sexual comments toward her, often under his breath so only she could hear or when no one else was present.

20. Based on Defendant Mittal's continued harassment, Ms. Burr contacted CORE's Operating Room Director, Matt White, on July 31, 2021 and requested to be removed from Defendant Mittal's team.

21. Ms. Burr relayed her concerns, as she had done numerous times previously, regarding the work environment under Defendant Mittal.

22. However, no change was made and she continued to be subjected to harassment by Defendant Mittal.

23. Soon after she requested to be removed from Defendant Mittal's surgical team, Defendant Mittal's behavior toward Ms. Burr escalated. On or about August 17, 2021, in response to another unspecified request by Defendant Mittal for "pictures" while in the operating room, Ms. Burr asked Defendant Mittal what he meant, and he responded that he wanted "nudes."

24. Internally distraught, Ms. Burr attempted to keep her composure and expressed to Defendant Mittal that his conduct was harmful and unwelcome.

25. Defendant Mittal reached toward her and poked her breasts, commenting that "those aren't even real." This took place while Defendant Mittal and Ms. Burr were in his operating room with an unconscious patient.

26. Defendant Burr physically recoiled from Defendant Mittal, again indicating his conduct was unwelcome.

27. Defendant Mittal subsequently asked Ms. Burr where she was going after work, to which Ms. Burr replied that she was going home. In response, Defendant Mittal called Ms. Burr a "chicken" and tried to convince her to show him her breasts.

28. On or about August 19, 2021, Defendant Mittal said to Ms. Burr, "Let's see them," and "those are padded," again referring to her breasts. He forcefully reached under Ms. Burr's scrubs and grabbed her breast.

29. Ms. Burr desperately pushed him off of her, asking "What are you doing?!", to which Defendant Mittal responded by laughing.

30. On or about August 25, 2021, while carefully working on a time-sensitive cement mold during a patient's surgery, Defendant Mittal, pressuring Ms. Burr to hurry and complete the job, began yelling at and berating Ms. Burr in front of her coworkers.

31. Once Ms. Burr was finished, she asked Defendant Mittal what the yelling was all about. Not one to be questioned by a female subordinate, Defendant Mittal replied, "Oh look, now your vibrator's "on" switch is on! You're vibrating!"

32. Defendant Mittal continued this harassment the very next day, openly directing sexually explicit comments toward Ms. Burr, such as, "Dana, tell us about your dildo," and "you know you like it."

33. Ms. Burr explicitly announced loudly that she did not like it, while others in the room laughed.

34. On or about September 17, 2021, Ms. Burr again reported the ongoing sexual harassment and the sexual assault to Matt White.

35. Mr. White told Ms. Burr that his "hands were tied" due to Defendant Mittal's position of influence and authority.

36. Mr. White then finally reported the incidents to Chief Nursing Officer Rebecca Benham, who indicated that CORE would conduct an internal investigation regarding her allegations.

37. On or about September 29, 2021, after over a month of Ms. Burr suffering from debilitating depression, anxiety, insomnia, and PTSD due to the ongoing sexual harassment, her counselor recommended that she seek in-patient care.

38. On or about October 1, 2021, she was admitted to Laureate Psychiatric Clinic and Hospital in Tulsa, Oklahoma.

39. On or about October 12, 2021, she received a release to return to work.

40. Upon returning to work on October 19, 2021, Ms. Burr discovered that she was left off all surgical team schedules and was told to take the rest of the week off.

41. Further, Ms. Burr discovered that Mr. White was fired while she was away, and many coworkers refused to engage with her in the ordinarily collaborative and cooperative efforts inherent to her job, on account of her reports of sexual harassment and assault, which led to Mr. White's firing.

42. On October 29, 2021, Ms. Burr requested a status update on CORE's supposed internal investigation.

43. On November 4, 2021, Ms. Burr met with CORE administrators and learned that, despite the fact that Mr. White was fired some point in October, the findings of the internal investigation were deemed "inconclusive."

44. Ms. Burr's efforts to resolve issues with coworkers refusing to speak to her were unsuccessful, despite Ms. Burr's reports of the same to CORE administrators.

45. Consequently, on December 3, 2021, Ms. Burr resigned from CORE.

46. Upon information and belief, Defendant Bristow Endeavor Healthcare, LLC has repeatedly failed to dispel harassment in the workplace. In fact, at least one female former employee who worked at Bristow's now-defunct Bristow, Oklahoma medical facility either initiated or threatened litigation against Bristow for its indifference to severe and pervasive sexual harassment at the facility.

47. Further, upon information and belief, Bristow maintains no written policies addressing sexual harassment in the workplace or reporting of the same.

48. Alternatively, any written policy on sexual harassment is a policy in name only, as Bristow, through its reckless indifference to known and reported instances of sexual harassment and assault and its retention of a serial sexual harasser, created a hostile working environment caused by repeated sexual advances, sexually-charged comments, and—in Ms. Burr's case—sexual assault and battery.

### III.   CAUSES OF ACTION

#### COUNT I – NEGLIGENCE/GROSS NEGLIENCE
*Common Law*
**As to Defendant Bristow**

49. Ms. Burr incorporates by reference paragraphs 1-22, 28, as if fully set forth herein.

50. Defendant Bristow, knowing of Dr. Mittal's propensity for sexually inappropriate conduct, owed a duty to Ms. Burr, its employee, to exercise ordinary care to protect her from being sexually assaulted by Defendant Mittal.

51. A reasonable company in Defendant Bristow's position, knowing of Defendant Mittal's propensities, would have either removed Ms. Burr from Defendant Mittal's surgical team upon her request, adequately supervised Defendant Mittal, and/or declined to retain Defendant Mittal in light of known reports of sexually inappropriate conduct.

52. As a result of Defendant Bristow's breach of duty, Defendant Mittal had an opportunity to—and did—sexually assault and batter Ms. Burr at work.

53. In fact, Defendant Bristow 's failures to corral Defendant Mittal, or at least take adequate measures to protect Ms. Burr, in light of known reports of his misconduct, are particularly heinous, and Defendant Bristow's acts and omissions in this regard are sufficient to entitle Ms. Burr to punitive damages under Oklahoma law for acts and omissions made with malice or reckless regard and indifference to Ms. Burr's rights under the law.

### COUNT II – HOSTILE WORK ENVIRONMENT
*Title VII of the Civil Rights Act of 1964*
**As to All Defendants**

54. Ms. Burr incorporates by reference the preceding paragraphs as if fully set forth herein.

55. Ms. Burr is a member of a protected class under Title VII on the basis of her sex.

56. Between June 2019 and December of 2021, Ms. Burr experienced sexual harassment on an ongoing basis.

57. The harassment was unwelcome, and Ms. Burr made that clear on numerous occasions, both to Defendant Mittal and to CORE administrators.

58. Because of the never-ending barrage of sexually explicit comments, innuendos, "jokes," and constant staring at and physical unwanted touching of her breasts, Ms. Burr found the working environment to be so hostile that she had to seek in-patient mental health care and, ultimately, resign.

59. Based on the frequency and severity of Defendant Mittal's conduct, a reasonable person in Ms. Burr's position would also have found the working environment to be objectively hostile.

60. Finally, Defendant Bristow, knowing of the ongoing sexual harassment, failed to exercise reasonable care to promptly prevent and correct the harassment, for example, by:

    a. failing to discipline Defendant Mittal;

    b. failing to implement training intended to prevent the harassment;

    c. retaining Defendant Mittal following multiple allegations of sexual harassment;

   d. failing to accommodate Ms. Burr's request to be assigned to another doctor's surgical team; and

   e. taking other reasonable step to protect Ms. Burr from Defendant Mittal's harassment.

**COUNT III – RETALIATION**
*Title VII of the Civil Rights Act of 1964*
**As to Defendant Bristow**

 61. Ms. Burr incorporates by reference the preceding paragraphs as if fully set forth herein.

 62. Ms. Burr engaged in an activity protected under Title VII by complaining of the sexual harassment on multiple occasions.

 63. As a direct and proximate result of Ms. Burr's complaints, she was subjected to multiple materially adverse actions.

 64. Specifically, as one example, Ms. Burr was removed from the schedule and told to go home the week she returned from in-patient care.

 65. Additionally, CORE exposed Ms. Burr as the complainant of harassment by Defendant Mittal, which led to the ostracization of Ms. Burr among her coworkers, and which ultimately made her job impossible to perform.

**COUNT IV – SEXUAL ASSAULT**
*Common Law*
**As to Defendant Mittal**

 66. Ms. Burr incorporates by reference the preceding paragraphs as if fully set forth herein.

67. By reaching to grab Ms. Burr's breast in a professional setting and without her consent, Defendant Mittal caused Ms. Burr to apprehend an imminent offensive contact with her person, which amounted to an assault under Oklahoma common law.

68. Defendant Mittal is therefore liable for the damages Ms. Burr sustained as a result of this inappropriate and unlawful conduct.

### COUNT V – SEXUAL BATTERY
*Common Law*
**As to Defendant Mittal**

69. Ms. Burr incorporates by reference the preceding paragraphs as if fully set forth herein.

70. By grabbing Ms. Burr's breast in a professional setting and without her consent, Defendant Mittal made an offensive contact with Ms. Burr's person, which amounted to a sexual battery under Oklahoma common law.

71. Defendant Mittal is therefore liable for the damages Ms. Burr sustained as a result of this inappropriate and unlawful conduct.

### V.    RELIEF REQUESTED

72. Ms. Burr incorporates by reference the preceding paragraphs as if fully set forth herein.

73. As a direct and proximate result of the Defendants' acts and omissions as set forth above, Ms. Burr suffered injuries and damages for which they are liable, including, without limitation:

   a. Humiliation, degradation, anger, anxiety, depression, loss of ability to perform tasks, sleep disturbances, symptoms of PTSD, loss of enjoyment of life, and general emotional distress, past and future;

   b. Economic losses, past and future, including, without limitation, medical expenses, out-of-pocket expenses, and lost wages;

   c. Litigation expenses associated with the prosecution of the instant action, including, but not limited to, court costs, anticipated discovery expenses, anticipated expert expenses, incurred up to this point and continuing into the future, and the maximum judgment interest permitted by law; and

   d. Any other expenses allowed by federal or state law, including, but not limited to, reasonable attorney's fees and costs.

**WHEREFORE,** Ms. Burr respectfully requests that the Court enter judgment in her favor and against the Defendants as follows:

   a. Compensatory and/or nominal damages against all Defendants;

   b. Punitive damages;

   c. Costs in this action, including reasonable attorney fees, interest, and costs;

   d. Any and all other relief as provided by law; and

   e. Any relief the Court deems just and equitable under the circumstances.

Respectfully submitted,

/s/ Damario Solomon-Simmons

Damario Solomon-Simmons, OBA No. 20340
Kymberli J.M. Heckenkemper, OBA No. 33524
**SOLOMONSIMMONSLAW, PLLC**
601 S. Boulder Ave., Ste. 600
Tulsa, Oklahoma 74119
(918) 551-8999 (telephone)
(918) 558-8039 (facsimile)
dss@solomonsimmons.com
kheckenkemper@solomonsimmons.com

***Attorneys for Plaintiff***